Court of Chancery—Kessler v. Smith.

PHILIP F. KESSLER et al., complainants,

*v.*

FREDERICK SMITH et al., defendants.

[Decided November 25th, 1924.]

Conveyances—Alleged Fraudulent—Creditors' Bill to Set Aside —Conveyance by Insolvent to Brothers Who Had Claims— Defendants' Right to so Prefer Creditors Unquestionable— Conveyance of Greater Probable Value Than the Preferred Claims—Complainants' Entitled to Have Additional Value Applied to Their Claims.

On final hearing.

*Messrs. Stamler, Stamler & Koestler,* for the complainants.

*Mr. John F. Reger,* for the defendants.

BUCHANAN, V. C.

Primarily this is a creditor's bill, seeking to set aside, as a fraudulent conveyance, a certain deed made by the defendant Frederick Smith to the defendants Charles Smith and Alice Smith, May 27th, 1921, comprising his one-third undivided interest in certain real property at Bound Brook, New Jersey (in which the defendants owned the other two-thirds). The property in question consists of a considerable tract of land on which is a residence and an old greenhouse. It was conveyed to the three Smiths by their mother, in April, 1915, and at the same time Frederick Smith commenced the erection of a new greenhouse thereon at a cost of $12,000, plus $1,500 for the "benches." This was constructed by Hitchings & Company, one of the complainants, who have never been fully paid. The other complainant, Kessler, is a man from whom Frederick Smith borrowed

money from time to time, commencing in 1915, and who alleges that the money was borrowed for the purpose of paying for the erection of the greenhouse.

It was the idea of the complainants' counsel that the defendants Charles and Alice were liable personally for some fraud or conspiracy in having this greehouse erected on land which belonged in part to them, and certain allegations were made in the bill, and certain of the proofs presented, on that theory. Suffice it to say that I am unable to find any justification for any finding or decree in that behalf, anything which would impose any primary liability upon Charles or Alice. Whether or not Frederick was guilty of any fraud or false representation is immaterial, for he is, in any event, primariily liable for the debts due to complainants.

Taking up the case as a creditors' bill, it appears, and is conceded, that at the time of the deed in question Frederick Smith was insolvent, that he owed the debts due to the two complainants, and numerous other debts of considerable magnitude; had, at least, one judgment against him in New York, and the only assets he had were his interest in this Bound Brook property, and his growing crops, worth, perhaps, $7,000 to $8,000. These growing crops froze, so that he realized nothing from them. Whether this happened before or after he made the deed is not quite clear, but it is immaterial, for he says he owed over $20,000.

It is proven to my satisfaction that his brother and sister had loaned to him from time to time sums aggregating $4,800. He says he made this conveyance to his brother and sister in order to pay that debt, so that they might have that preference. It is, of course, well settled that he had the right so to do, and they had the right to accept such preferential payment. Whether or not Frederick had any actual intent to defraud or delay other creditors cannot deprive Charles and Alice of this right to payment of the $4,800 debt, unless they participated in that intent, unless they knew or were chargeable with knowledge that Frederick had that intent.

Some of the evidence certainly affords ground for suspicion that they did participate either actually or in contemplation of law, but they impressed me rather favorably upon the witness-stand (in marked contrast to Frederick), and after a careful consideration of all the evidence, I am unable to say that complainants have borne the burden of proof which is upon them to establish this. Indeed, I am rather of opinion that the weight of the evidence is in favor of Charles and Alice.

Remains the question of adequacy of consideration. The testimony of all of the defendants is that Frederick erected the greenhouse as his own project. His brother and sister made no objection, but expressly stated that they would not share in the cost. It was tentatively agreed that Frederick would buy out their shares in the property and establish his own flower business there, though no price had been fixed. This plan fell through by reason of Frederick's ensuing financial reverses.

As amongst the three, therefore, the new greenhouse belonged to Frederick. On a sale in partition he would have been entitled to one-third of that portion of the sale price which represented the value of the property if the greenhouse had not been built, plus the entire portion of the sale price, which represented the additional value of the property by reason of the new greenhouse. *Shipman* v. *Shipman, 65 N. J. Eq. 556* (at *p. 559*). Or if the property were susceptible of actual partition, he would be entitled to such tract or part of the lands as contained the new greenhouse, and was of approximately one-third of the value of the entire property exclusive of the greenhouse. *Booraem* v. *Wells, 19 N. J. Eq. 87* (at *p. 101*); *Brookfield* v. *Williams, 2 N. J. Eq. 341;* see, also, *Kencaster* v. *Erb, 83 N. J. Eq. 625* (at *p. 628*); *Woolston* v. *Pullen, 88 N. J. Eq. 35* (at *p. 40*).

The contention of the defendants Charles and Alice, is that the value of Frederick's interest at the time of the deed (based on the average of the figures given by their own witnesses as to value) was $1,500, as one-third of the land without the greenhouse, and subject to a mortgage of $2,500,

plus $5,166.66, as the additional value of the greenhouse, or a total of $6,166.66. I am inclined to believe this figure is less than the actual value. The testimony of complainants' witnesses would so indicate, and it would naturally be expected that defendants' figures would be low. Moreover, Frederick Smith (whom defendants offered as a witness) said that he had expected to pay $10,000 to his brother and sister for their shares in the property, i. e., two-thirds of the value exclusive of the new greenhouse.

But taking defendants' own figure of $6,166.66, the consideration paid was inadequate. The consideration paid was the satisfaction of the $4,800 borrowed by Frederick from his brother and sister, plus a promise to advance or loan an additional $200—this according to the testimony of the three Smiths themselves. This is less by over $1,000 than defendants' own valuation of Frederick's interest conveyed. Defendants argue that the interest on the $4,800 loaned and payments for upkeep brings the actual consideration up to over $7,000. Defendants themselves testify that no interest was ever asked for; no time was ever fixed for repayment of the advances; no demand ever made for such repayment. They were evidently acting toward each other as brothers and sisters, not on a strict business basis. Whatever claim defendants might have had to interest on the advances and upkeep payments is more than offset by the fact that they occupied and used the new greenhouse as soon as it was finished, and have continued so to do. They have had all the use and occupation of the entire premises, including the new greenhouse, for all these years since 1915; Frederick Smith had none. Presumably, it was understood, at least tacitly, that this offset the interest and upkeep payments that Frederick otherwise would have been expected to pay. No demand was ever made on him for any such payments until the present, when it is made by way of the argument above mentioned. Nothing was said about it at the time of the deed.

I think the conveyance may stand as security for the $5,000, which is the expressed consideration, and the con-

sideration which was testified to, but may stand only in that behalf and to that extent. Complainants are entitled to have the additional value applied, to the satisfaction of the debts due them. *Cf. Horton v. Bamford, 79 N. J. Eq. 356* (at *p. 379*), and cases cited.

There seems no doubt as to the right of complainants as attaching creditors to maintain their creditors' bill and to have relief, especially in view of the statute. *P. L. 1919 ch. 213.*

Defendants' counsel contends that complainants have failed to prove that they are remediless at law. This contention is without weight. The judgment debtor, Frederick Smith, defendants' own witness, testified that he had not one dollar's worth of assets.

Complainants may have decree setting aside the conveyance, on their giving bond to secure the defendants' $5,000. *Cf. Horton v. Bamford, supra.*